# In the
# United States Court of Appeals
## for the Second Circuit

———————

AUGUST TERM 2025

No. 25-207-cv

UNITED STATES OF AMERICA, EX REL. MIKE D. HENIG AND HENIG FURS, INC.,
*Plaintiffs-Appellants*,

UNITED STATES OF AMERICA,
*Plaintiff*,

v.

AMAZON.COM, INC., AND AMAZON.COM SERVICES, LLC,
*Defendants-Appellees.*[*]

———————

On Appeal from the United States District Court
for the Southern District of New York

———————

ARGUED: FEBRUARY 6, 2026
DECIDED: MAY 20, 2026

———————

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

Before: CABRANES, NARDINI, and KAHN, *Circuit Judges*.

———————

The False Claims Act, 31 U.S.C. §§ 3729(a)(1)(G) and (C), respectively, imposes liability for both (1) "knowingly . . . caus[ing], to be made or used, a false record or statement material to an obligation to pay . . . the Government" and (2) "conspir[ing]" in the submission of these so-called "reverse false claims."

Plaintiffs-Appellants Mike D. Henig and Henig Furs, LLC, as relators on behalf of the United States, allege that Defendants-Appellees Amazon.com, Inc. and Amazon.com Services, LLC caused and conspired with foreign manufacturers of fur products sold over its e-commerce platform to submit reverse false claims to the United States so that the manufacturers could avoid certain tariffs and import fees.

The United States District Court for the Southern District of New York (Edgardo Ramos, *Judge*) dismissed Plaintiffs' operative complaint in full, holding that it failed to properly allege two elements needed to establish a "reverse false claim" under § 3729(a)(1)(G)—knowledge and causation—or to plead the elements of a false claims conspiracy under § 3729(a)(1)(C)—an agreement to enter into a conspiracy to submit false claims and overt acts in furtherance thereof.

On appeal, we **AFFIRM** the District Court's dismissal. We agree that the District Court properly dismissed the § 3729(a)(1)(G) claim because Plaintiffs did not sufficiently allege that Defendants had knowledge of the foreign manufacturers' false claims. We likewise conclude that the District Court properly dismissed the § 3729(a)(1)(C) conspiracy claim, as an agreement to enter into a reverse false claims conspiracy could not be pleaded absent knowledge of the underlying reverse false claims, and Plaintiffs otherwise failed to allege an overt

2

act in furtherance of a conspiracy.

RICHARD C. GODFREY, Quinn Emanuel Urquhart & Sullivan, LLP, Chicago, IL (Andrew H. Schapiro, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, *on the brief*) *for Plaintiff-Appellants*,

DAVID M. GOSSETT, Davis Wright Tremaine LLP, Washington, DC (Jim Howard and Erwin Reschke, Davis Wright Tremaine LLP, Seattle, WA; Stephen M. Nickelsburg and Glen Donath, Clifford Chance US LLP, Washington, DC; Sanaz Payandeh, Clifford Chance US LLP, New York, NY, *on the brief*), *for Defendants-Appellees.*

JOSÉ A. CABRANES, *Circuit Judge*: [1]

We consider here a suit directed at Amazon's business structure and design under the False Claims Act ("FCA"), which imposes civil liability on those who defraud the United States Government for money or property.[2] By bringing a "*qui tam* action"[3] to enforce the United States Government's interests,[4] private enforcers known as

---

[1] Except as otherwise noted, all internal citations, quotation marks, and brackets are omitted, and all factual allegations are drawn from Plaintiffs' Second Amended Complaint ("SAC"), Joint Appendix ("JA") 417–34.

[2] The FCA, 31 U.S.C. § 3729, provides, in pertinent part:

(a) Liability for certain acts.--

(1) In general.--Subject to paragraph (2), any person who--

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

\*　　　\*　　　\*

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

[3] BLACK'S LAW DICTIONARY 1368 (9th ed. 2024) (defining "*qui tam* action") ("An action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.").

[4] Because the Government is the real party in interest in a *qui tam* action, it is entitled to intervene and to take over the prosecution. 31 U.S.C. § 3730(b)(4)

"relators"[5] can collect on an alleged violator's debts and then some on the Government's behalf.[6] These relators are entitled to a share of the proceeds from any judgment against or settlement with alleged violators,[7] who face liability for civil penalties and up to treble

("Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall-- (A) proceed with the action, in which case the action shall be conducted by the Government; or (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action."); *see also United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 426–27 (2023). The Government notified the district court that it declined to intervene in the instant action. *See* JA-63–64.

[5] *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769 (2000) (defining a "relator" under the FCA as "a private person" who "may bring a *qui tam* civil action for the person and for the United States Government against the alleged false claimant, in the name of the Government" (internal quotation marks omitted)); *see Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 97 (2d Cir. 2009) ("In a *qui tam* action, a private plaintiff, known as a relator, brings suit on behalf of the Government to recover a remedy for a harm done to the Government.") (collecting cases).

[6] 31 U.S.C. § 3730(b)(1) ("A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government.").

[7] 31 U.S.C. § 3730(d) provides:

Award to qui tam plaintiff.--(1) If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation. Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. Any such person shall also

damages.[8]

Plaintiffs-Appellants Mike D. Henig and Henig Furs, LLC, as relators on behalf of the United States, appeal from the final judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *Judge*), dismissing their *qui tam* action under the FCA against Defendants-Appellees Amazon.com, Inc. and Amazon.com Services, LLC (jointly, "Amazon").

Cheating the Government violates the FCA whether the fraud bilks the Government for more than it owes with a "false claim" or

---

receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

(2) If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

(3) Whether or not the Government proceeds with the action, if the court finds that the action was brought by a person who planned and initiated the violation of section 3729 upon which the action was brought, then the court may, to the extent the court considers appropriate, reduce the share of the proceeds of the action which the person would otherwise receive under paragraph (1) or (2) of this subsection, taking into account the role of that person in advancing the case to litigation and any relevant circumstances pertaining to the violation. If the person bringing the action is convicted of criminal conduct arising from his or her role in the violation of section 3729, that person shall be dismissed from the civil action and shall not receive any share of the proceeds of the action. Such dismissal shall not prejudice the right of the United States to continue the action, represented by the Department of Justice.

(4) If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

[8] *See* note 2, *ante*.

shortchanges the Government with a so-called "reverse false claim."[9] The law targets both "false or fraudulent claim[s] for payment or approval" to the federal government as well as "false record[s] or statement[s] material to an obligation to pay" it.[10] These statements need only be made "knowingly," not necessarily with intent to defraud.[11]

The FCA does not limit liability to those who directly submit a reverse false claim to the Government. In addition to those who "make" or "use" such claims, the statute also imposes liability on any person who (1) "knowingly . . . causes" a reverse false claim to be "made or used" or (2) "conspires" in its submission.[12]

Plaintiffs accuse Amazon of both, and they claim relief for:

(1) Amazon "knowingly . . . caus[ing]" third-party sellers on its

---

[9] A "reverse false claim" refers to action to avoid paying the Government money it is owed. *See Miller v. United States ex rel. Miller*, 110 F.4th 533, 542 (2d Cir. 2024) ("[T]he FCA's reverse false claim provision . . . covers claims of money *owed* to the government, rather than payments *made* by the government." (internal quotation marks omitted)).

[10] *See* note 2, *ante*, at (A), (G).

[11] 31 U.S.C. § 3729(b)(1) provides:

(1) the terms "knowing" and "knowingly" --

(A) mean that a person, with respect to information--

(i) has actual knowledge of the information;

(ii) acts in deliberate ignorance of the truth or falsity of the information; or

(iii) acts in reckless disregard of the truth or falsity of the information; and

(B) require no proof of specific intent to defraud.

[12] *See* note 2, *ante*, at (G) & (C).

site to submit false forms to avoid tariffs and import fees, in violation of § 3729(a)(1)(G); and

(2) Amazon "conspir[ing]" in the third-party sellers' fraudulent scheme, in violation of § 3729(a)(1)(C).

We review the District Court's dismissal of each claim for error.[13] Finding none, we **AFFIRM**.

## BACKGROUND

Under federal law, fur importers must pay various taxes and fees on shipments of their products that enter the United States. One such charge is a mandatory Fish and Wildlife Service ("FWS") import fee for inspecting shipments upon entry into the United States.[14] Another is a non-discretionary tariff at a rate determined by the shipment's country of origin and contents, which is calculated and collected by the United States Customs and Border Patrol ("CBP") as a percentage of the shipment's total value.[15] The agency usually calculates the tariff amount using the information that an importer

---

[13] On appeal, Plaintiffs do not renew their argument that Amazon can be held liable under § 3729(a)(1)(G) for "knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay the Government." *Compare* Plts. Br., Dkt. No. 32-01, at 4 ("Issues Presented for Review") *with* SAC, at JA-430–31 ¶¶ 83–84 (distinguishing between Plaintiffs' two distinct theories of liability under § 3729(a)(1)(G)). "[A]rguments not raised in an appellant's opening brief . . . are not properly before an appellate court . . . ." *Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009). We accordingly do not consider that theory of liability here.

[14] JA-421 ¶¶ 14, 16–20; *see also* 50 C.F.R. § 14.61 (on the reporting requirements for fur imports). For the purpose of this appeal, we assume without deciding that the imports at issue were subject to these fees.

[15] JA-422 ¶¶ 21–31; *see also* U.S. Int'l Trade Comm'n, Harmonized Tariff Schedule of the United States §§ 4303.10.00, 9903.88.03.

provides on a "Customs Declaration" attached to the shipment.[16]

Plaintiffs allege that several foreign manufacturers of fur products who marketed and sold through Amazon (the "Foreign Manufacturers") provided false information to avoid or decrease these payment obligations. This alleged fraud was accomplished by misstating the contents and value of shipments on Customs Declarations, so as to pay artificially deflated tariffs, and omitting forms needed to conduct FWS inspections and sending shipments through ports without an FWS facility, so as to avoid paying FWS inspection fees. The Foreign Manufacturers allegedly reaped the benefits of this practice over the course of fifteen years. [17]

Under the terms of its standard Business Services Agreement ("BSA") with the Foreign Manufacturers and other third-party sellers, Amazon was not deemed the "importer of record" for these furs. The BSA provided that each third-party seller must "list [itself] as the importer/consignee and nominate a customs broker."[18] It also provided that the importer of record was responsible for "paying the import duties, taxes, and fees associated with the shipment."[19] To that end, Amazon's website advises third-party sellers that "Amazon,

---

[16] JA-422 ¶¶ 29–31.

[17] JA-431–32 ¶ 87.

[18] JA-239. Plaintiffs attached the BSA to their First Amended Complaint but not to their operative SAC. The Court deems the BSA "integral" to the operative complaint because Plaintiffs do not pursue a theory of vicarious liability that Amazon itself made or used the false statements, Plaintiffs have abandoned their argument that Amazon itself had an obligation to pay the taxes and fees on appeal, and the BSA seems to underlie Plaintiffs' allegations that Amazon alerted suppliers that it would not oversee importation. *See post* at n.27 and accompanying text.

[19] JA-260.

including [its] fulfillment centers, will not act as an [importer of record]."[20] And it is "[t]he importer of record" who "is responsible for ensuring that the shipment is successfully imported into the destination country."[21] This responsibility "include[s] filing legally required documents and paying assessed import duties and taxes."[22]

The furs at issue were marketed and sold as furs on the Amazon.com website, and were stored and delivered to customers from Amazon's facilities. Amazon also remitted a share of the revenues on these furs to the Foreign Manufacturers. But it is undisputed that from manufacture to import to arrival at Amazon's facilities, the furs remained outside of the company's custody. The parties therefore agree that Amazon neither made the false statements on the Customs Declarations nor controlled the process through which the furs were imported.

Plaintiffs allege, however, that once the furs reached Amazon, the company became aware of the Foreign Manufacturers' false claims—through either actual or constructive knowledge. Each shipment of fur would have arrived at an Amazon warehouse with a Customs Declaration and packing slip listing the wrong product and price, which would contradict the information in the invoice included with that shipment and the information Amazon used to market and sell the products on its website. Plaintiffs also claim that the lack of FWS inspection forms accompanying the shipments and other indications that the shipments had not passed through FWS ports notified Amazon that FWS inspection fees had not been paid. In Plaintiffs' view, these facts demonstrate Amazon's actual knowledge

---

[20] JA-286.

[21] JA-221.

[22] *Id*.

of the false claims, or its deliberate ignorance or reckless disregard with respect to those claims.

And yet, in a fifteen-year period over which the fraud continued, Plaintiffs allege, Amazon never once rejected the Foreign Manufacturers' furs.[23] Nor did it pay the Government the tariffs and fees that are alleged to have been fraudulently avoided. Amazon instead continued to market, sell, and deliver these furs to consumers, all while remitting payment to the Foreign Manufacturers.

Rather than assert claims against the Foreign Manufacturers, Plaintiffs brought the present action against Amazon. The District Court dismissed their SAC under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state claims for relief. According to the District Court:

(1) Plaintiffs failed to adequately allege the knowledge or causation required for their § 3729(a)(1)(G) claim that Amazon knowingly caused the Foreign Manufacturers' reverse false claims;[24] and

(2) Plaintiffs failed to adequately allege an agreement between Amazon and the Foreign Manufacturers to violate the FCA or a non-duplicative overt act in furtherance of that alleged agreement, as required for their conspiracy claim under § 3729(a)(1)(C).[25]

---

[23] JA-427 ¶ 59.

[24] *United States ex rel. Henig v. Amazon.com, Inc.*, No. 19-CV-05673 (ER), 2025 WL 27736, at *7–*10 (S.D.N.Y. Jan. 3, 2025).

[25] *Id.* at *10–*12.

This appeal followed.

## DISCUSSION

We review *de novo* the District Court's dismissal for failure to state a claim pursuant to Rule 12(b)(6) and may affirm on any ground supported by the record.[26] At this posture, the reviewable record includes the operative complaint; any documents attached to, incorporated by reference in, or integral to it; and any facts of which we may take judicial notice.[27]

Fraud claims must be pleaded both plausibly and with particularity. An adequate complaint for claims sounding in fraud must both set forth "the who, what, when, where and how of the fraud"[28] and contain "sufficient factual matter" to "plausibly give rise to an entitlement to relief."[29] In reviewing the legal sufficiency of the complaint, we assume the veracity of the complaint's non-conclusory factual allegations and draw all reasonable resulting inferences in its favor.[30]

## I

With these standards in mind, we turn to the question of

---

[26] *Sonterra Cap. Master Fund, Ltd. v. UBS AG*, 152 F.4th 404, 409–10 (2d Cir. 2025).

[27] *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

[28] *Miller*, 110 F.4th at 544 (internal quotation marks omitted); *see also* FED. R. CIV. P. 9(b).

[29] *Lynch v. City of N.Y.*, 952 F.3d 67, 74, 75 (2d Cir. 2020).

[30] *Id.* at 75.

whether Plaintiffs have sufficiently pleaded that Amazon "knowingly . . . cause[d] to be made or used . . . a false record or statement material to an obligation to pay or transmit money or property to the Government," in violation of § 3729(a)(1)(G).

On appeal, the basic facts concerning the mechanics of the alleged fur-import fraud are not in dispute. The issue is instead whether Amazon (1) "knowingly" and (2) "caused" the asserted reverse false claims.

We begin with the "knowingly" component. For purposes of § 3729(a)(1)(G), knowledge that the claims are false can be established in three ways: (1) actual knowledge—*i.e.*, the defendant is aware of the falsity of the claims; (2) deliberate ignorance—*i.e.*, the defendant is aware of a substantial risk that the claims are false, but intentionally avoids taking steps to confirm their validity; and (3) reckless disregard of the truth or falsity of the claims—*i.e.*, the defendant is "conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway."[31] "Rule 9(b) permits knowledge to be averred generally, but plaintiffs . . . still must plead the factual basis which gives rise to a strong inference of fraudulent intent."[32] This strong inference can be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."[33]

Plaintiffs have failed to plead knowledge under any of these

---

[31] *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750–51 (2023).

[32] *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (internal quotation marks omitted).

[33] *Id.*

13

three acceptable bases. Starting with actual knowledge, the SAC does not identify any individual or entity at Amazon that consciously acknowledged the existence of false information attached to the Foreign Manufacturers' fur shipments. Rather, the SAC notes only hypothetical observations that certain Amazon employees could have made about the Foreign Manufacturers' shipments and inferences that could have been drawn from these observations. These allegations are insufficient to show that Amazon or its employees were aware of the Foreign Manufacturers' false claims.[34] Nor does the SAC contain sufficient circumstantial evidence to "give[] rise to a strong inference of fraudulent intent."[35] In particular, the SAC does not detail conduct on the part of Amazon that evinces knowledge of the Foreign Manufacturers' wrongdoing. As alleged, Amazon's acceptance of the Foreign Manufacturers' fur shipments and subsequent efforts to sell these products were merely part of the company's ordinary business practices with respect to any products. Amazon's actions can just as easily be explained by its unawareness of the Foreign Manufacturers' false claims as it can by conscious awareness of them.[36]

Further, Amazon's knowledge has not been established through deliberate ignorance, because the SAC does not allege intentional steps that Amazon or its employees took to avoid learning about the Foreign Manufacturers' false claims. Plaintiffs argue that Amazon "shut its

---

[34] *See SuperValu*, 598 U.S. at 751.

[35] *Strock*, 982 F.3d at 66.

[36] To the extent that Plaintiffs maintain that knowledge was established by Amazon and the Foreign Manufacturers' mutual profit motive, this argument fails because a generalized profit motive is insufficient to establish scienter under Rule 9(b). *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (holding the same in the context of a claim under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and of Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder).

14

eyes" to the truth of these claims by delegating the responsibility to pay import tariffs to third-party suppliers.[37] However, the SAC does not allege that this delegation was made in response to a known and substantial risk that false claims were being submitted. Plaintiffs contend that the below-market prices on the Foreign Manufacturers' furs alerted Amazon to the risk that FWS fees and import tariffs were not being paid on these goods, as these prices were possible only through avoidance of such charges. However, the SAC does not allege that Amazon assessed third-party compliance risks by comparing the prices on third-party products to those of market competitors. Nor does it provide any basis to believe that Amazon would attribute the Foreign Manufacturers' low prices to avoidance of FWS fees and import tariffs, as opposed to an innocent explanation like economies of scale or lower labor costs. Below-market prices alone are therefore insufficient in this case to show that Amazon was aware of a substantial risk that the Foreign Manufacturers were submitting false claims. And the SAC does not identify any other purported risk. Thus, it does not establish that Amazon's delegation of responsibilities to third-parties to pay import duties was made in an effort to avoid learning of false statements being made by outside suppliers.

Plaintiffs further argue that Amazon was deliberately ignorant because it failed to institute oversight procedures for claims that the Foreign Manufacturers were submitting. Once again, however, the SAC contains no allegations suggesting that Amazon purposefully decided not to implement these procedures. And while Plaintiffs' briefing proposes steps that Amazon could have taken to learn about the Foreign Manufacturers' false claims, the mere existence of these possible steps does not imply that Amazon intentionally avoided taking them, much less that Amazon did so to keep itself in the dark

---

[37] Plts. Br., Dkt. No. 32-01, at 26–27.

with respect to a substantial risk that the Foreign Manufacturers were making false claims.

Finally, Plaintiffs have not pleaded knowledge through reckless disregard because the SAC does not allege that Amazon failed to make an inquiry that was "reasonable and prudent under the circumstances" to ascertain the truth of the Foreign Manufacturers' claims to FWS and CBP.[38] While the SAC alleges that Amazon could have learned of the Foreign Manufacturers' false claims by comparing the invoices on the fur shipments—which reflected their true contents—to the Customs Declarations affixed to those shipments—which incorrectly identified their contents and values—it does not establish that Amazon had a reason to do so. The SAC notes that the Foreign Manufacturers' fur shipments arrived in Amazon's warehouses after passing through points of entry where FWS inspections were held. Thus, by the time Amazon first exercised control over the fur shipments, the FWS inspections should have already taken place. Amazon would thus have no reason to inspect the shipments to ensure that the Foreign Manufacturers had paid FWS fees. Similarly, Plaintiffs provide no explanation as to why Amazon should have inspected the packaging slips and Customs Declarations attached to the fur shipments to ensure that the Foreign Manufacturers were paying the proper import tariffs. The SAC does not allege that this was industry custom or called for by Amazon's prior experience with other third-party suppliers.[39] Thus, under the circumstances

---

[38] S. Rep. No. 99-345, at 20 (1986); *accord U.S. ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 530 (6th Cir. 2012).

[39] Plaintiffs also highlight Amazon's admission from another matter that it can monitor and control certain products that it markets, receives, and distributes to ensure their safety for children. However, the relevant question is whether Amazon acted unreasonably and imprudently in failing to monitor products sold

pleaded in the SAC, Amazon did not act unreasonably or imprudently in failing to inspect the Foreign Manufacturers' fur shipments to discern whether they contained indicia of false claims.

The cases on which Plaintiffs rely to argue that the SAC properly pleaded reckless disregard are also inapposite. In *United States v. Krizek*, 111 F.3d 934 (D.C. Cir. 1997), the D.C. Circuit held that a psychiatrist had knowledge of thousands of false claims that his bookkeeper—who was also his wife—prepared and submitted for reimbursement to Medicare and Medicaid under a reckless disregard theory.[40] However, *Krizek* involved claims being prepared and submitted by a solo-practitioner's wife for reimbursement, whereas the present matter involves oversight of sophisticated commercial importers (the Foreign Manufacturers) by an online marketplace (Amazon) during the course of an arms-length business relationship. The unreasonableness of the failure to investigate is self-evident in the former situation, but not in the latter. Plaintiffs also rely on *Strock*, 982 F.3d 51, where this Court held that the defendant could be liable for structuring a company to fraudulently take advantage of government subsidies reserved for small businesses owned by service-disabled veterans.[41] We concluded that the owner of the company's knowledge of the false claims could be inferred from, in part, the elaborate steps that he took to ensure that the company was structured in a manner that made it eligible for these subsidies.[42] By contrast, here, the SAC does not point to active steps that Amazon took to avoid learning of

---

over its platform, not whether it had the ability to do so. The SAC does not establish that this was the case here.

[40] *United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997).

[41] *Strock*, 982 F.3d at 68.

[42] *Id.* at 66–67.

the truth of the Foreign Manufacturers' statements. These cases thus do not strengthen Plaintiffs' case for knowledge.

In sum, the District Court properly dismissed Plaintiffs' § 3729(a)(1)(G) claim on Rule 12(b)(6) grounds.[43]

## II

Plaintiffs likewise have not pleaded sufficient facts to allege that Amazon agreed to a conspiracy to submit reverse false claims or that it committed any overt acts "in furtherance" of the conspiracy. We therefore conclude that the District Court did not err in dismissing Plaintiffs' conspiracy claim under § 3729(a)(1)(C).

The factual allegations supporting Plaintiffs' conspiracy claims are coextensive with those supporting their insufficient § 3729(a)(1)(G) claim. And the SAC's failure to plead knowledge of reverse false claims necessarily implies that Amazon lacked the requisite mental state to enter into a conspiracy to submit reverse false claims. Simply put, Amazon could not have consciously entered into a conspiracy where it lacked knowledge of the conspiracy's underlying means and aims. We also conclude that the SAC's allegations describe nothing more than Amazon's routine business practices, which alone are insufficient to state a claim for conspiracy.[44] Amazon neither

---

[43] As Plaintiffs acknowledge, this Court has not yet adopted a causation standard for reverse false claims. We need not do so today, as Plaintiffs' § 3729(a)(1)(G) claim fails regardless of whether the SAC adequately pleads causation.

[44] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out [an antitrust conspiracy] claim; without that further circumstance pointing toward a meeting of the minds, an

affirmatively nor tacitly assented to the submission of the reverse false claims through its routine business practices. Nor would continuing to conduct business as usual constitute an overt act in furtherance of any such conspiracy. By relying on these practices, Plaintiffs plead nothing more than a failure to prevent fraud, not Amazon's conspiracy in the commission of alleged reverse false claims.

### CONCLUSION

To summarize, we hold as follows:

(1) Plaintiffs failed to plead facts establishing Amazon's knowledge of the Foreign Manufacturers' false claims, either by virtue of actual knowledge, deliberate indifference, or reckless disregard; accordingly, the District Court did not err in dismissing Plaintiffs' claim under § 3729(a)(1)(G) of the FCA;

(2) Plaintiffs failed to allege an agreement to enter into a reverse false claims conspiracy or an overt act in furtherance thereof; therefore, the District Court did not err in dismissing Plaintiffs' conspiracy claim under § 3729(a)(1)(C) of the FCA.

For the foregoing reasons, we **AFFIRM** the judgment of the District Court.

---

account of a defendant's commercial efforts stays in neutral territory."); *see also United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 917 (6th Cir. 2017); *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 27 (2d Cir. 2016).